## STATE v. BYRD.
No. 1967.
Circuit Court, Seminole County.
June 30, 1971.

David M. Porter, Assistant State Attorney, for the state.

Orville Johnson, III, Altamonte Springs, for the defendant.

DOMINICK J. SALFI, Circuit Judge.

This cause came on to be heard on the 30th day of June, 1971, upon defendant's motion in arrest of judgment and motion for new trial. The court having heard arguments on behalf of the defendant and the state and being fully advised in the premises, makes the following findings —

That the defendant, Robert Lee Byrd, was charged with the crime of rape by reason of an indictment returned by the grand jury on the 6th day of January, 1964. Defendant, a colored male, was charged with committing rape upon Edith Strong, a white female, on the evening of November 26, 1963. The evidence brought out that Mrs. Strong was returning to her home in Seminole County after having attended a Girl Scout advisors' meeting. It was about dusk at the time when she pulled her car into her carport. The outside light which was normally left on and was turned on before she left on the night of the date in question was off, and had been unscrewed, and the area around the carport was dark. After she stepped from the car and proceeded around the rear of the car, the defendant stepped out from behind a bush and grabbed her and threw her to the ground. There a struggle ensued for an extended period of time, taking defendant and the the victim a good distance out of the driveway and away from the house. After repeated blows, Mrs. Strong blacked out, at which time the crime was consummated. She regained consciousness as defendant fled across her lawn into an orange grove and being unable to stand, her clothes being generally torn to shreds, and her face being a pulverized mass, dragged herself to the base of her front door where, after repeated scratching, her daughter who was inside the house opened the door and found her mother and proceeded to call for help.

From the tire tracks, the sheriff's department was able to locate the car and the defendant was questioned after being advised of his rights, some three days after the incident, at which time the defendant admitted the commission of the crime and helped the law enforcement people locate the clothing which he had buried after he arrived home that night.

Psychiatric examinations were ordered and the defendant was declared not competent to assist his counsel in the preparation of his case and an order to that effect was entered on May 1, 1964, and he was sent off to the state hospital where he remained for some four years before he escaped; and a year and a half later was apprehended in California and returned to the state prison, where after less than a year, he was subsequently returned to this court as being able to stand trial. Following the psychiatric examinations, the defendant contended that voices in his head ordered him to commit

this violent crime. At arraignment, defendant relied solely upon the defense of insanity. He entered a plea of not guilty by reason of insanity and the court noted at that time that the defendant did not enter a separate plea of not guilty. The case came on for trial and after three days the jury returned a verdict of guilty, as charged, and without recommendation of mercy. This court was called upon to pass the death sentence on the defendant and these motions were subsequently filed.

In the defendant's motion in arrest of judgment, they urge primarily two points. First, they argue that this court does not have jurisdiction to try the defendant in that he was denied due process of law because he was not brought to trial sooner than seven years after his arrest. Of course, the facts in this case indicate that defendant was determined not competent to assist his counsel and as soon as the determination was made that he was competent to assist his counsel he was brought to trial in due course. This court believes that the statutes under which we operate are based on the premise that it would create a greater prejudice to try a defendant who is incompetent to the extent that he cannot assist his counsel in his defense, than it would be to send him off for mental treatment and return him at a subsequent time when it is determined that he can assist in his defense for the purpose of trial; however, in this particular case defendant caused the delay of almost two years by reason of his escape. All these matters sway the court to deny the motion in arrest of judgment on this ground.

At the conclusion of the trial, the court clerk found a note in the jury room and turned it over to this court which in an abundance of caution subsequently showed to counsel for both sides and then filed in the court file. Counsel for the defendant now contends that the note establishes that all of the jurors did not partake in the deliberation or cast votes as to the ultimate outcome of this matter. This contention cannot be sustained. The record reveals that after the jury announced its verdict, the jury was polled by the court and each one of the twelve jurors indicated that the verdict that was read was his verdict. This court feels that the polling of a jury places a very heavy burden upon anyone who seeks to attack a jury verdict. The procedure necessary to be followed in attacking any jury verdict requires an interview with the jury to determine whether there have been any procedural defects. No interview has been requested or conducted by the defense attorney. This court has reviewed the note which defendant has relied upon and the court finds that on the face of the note there are twelve marks which indicate that all twelve jurors were involved in the deliberation and, therefore, finds that there is a total absence of any evidence to indicate any irregularity in the verdict.

Defendant also filed a motion for new trial. Although seven grounds were raised in the motion, only two were argued before this court. The first raised the propriety of the court in admitting into evidence certain oral and written statements of the defendant. The objection to the admissions is based on the defendant's position that he was insane at the time of the offense as established by certain psychiatric reports in the file. This court finds that the only evidence before it which would in any way affect the admission of the confessions on the grounds alleged by the defendant was the order entered by the court determining that the defendant was unable to assist his counsel in preparation of his case of May 1, 1964, and as a result thereof he was ordered to the state hospital. There was no prior determination that the defendant was, in fact, legally insane at the time that the offense was committed and this court recalls no evidence showing that the defendant was unable to understand what he was doing at the time he made those particular statements some three days after the 26th day of November, 1963, the date of the alleged crime.

This court further finds that the plea entered in this case was a plea of "not guilty by reason of insanity". No separate not guilty plea was made by the defendant. In establishing the defendant's defense of insanity, he put on psychiatrists who related into the record admissions by the defendant of the commission of the crime, which admissions tracked the earlier confessions given to the sheriff's department. In summary, the defendant did not deny the admission of the crime but relied solely on the fact that voices in his head ordered him to commit this violent crime. It seems somewhat inconsistent to the court for the defendant to set up a sole defense of insanity and then permit him to claim that any statements he gave admitting the commission of the crime are inadmissible because he was insane at the time. This court refuses to accept this reasoning.

The final ground argued by the defendant to support his motion for new trial is his complaint that the court should have granted a judgment of acquittal at the conclusion of the state's case or at the conclusion of all the evidence because the psychiatrists' testimony established as a matter of law that the defendant was insane at the time of the commission of the offense. The evidence simply will not permit this court to make that finding. Three psychiatrists were called to testify by the defendant. The first psychiatrist, Dr. Dunn, when asked whether he would be able to formulate an opinion as to whether or not the defendant was insane at the time of the offense stated he was unable to reach any opinion on that question. The testimony demonstrated that Dr. Dunn was the psychiatrist who had spent more time with the defendant than any of the other doctors. The other two psychiatrists testified that in

their opinion the defendant was insane at the time the offense occurred and reached this conclusion as a result of less than an hour's worth of contact with him.

Also, the evidence revealed a large discrepancy between what the defendant told Dr. Dunn and what he told the other two psychiatrists. This discrepancy when brought out in rebuttal indicated that Dr. Dunn might have reached a totally different conclusion than the other psychiatrists if he had had the advantage of the statements that were made to the other psychiatrists. Finally, a careful review of the cross-examination of the psychiatrists demonstrates that the state placed in front of the jury some very serious questions concerning the ability of those particular psychiatrists and the validity of psychiatric examinations under those circumstances — their main thrust being that the examinations were based mainly on the subjective statements of the defendant who obviously had a great interest in the conclusions that the psychiatrists reached. The jury was instructed that they had a right to consider expert testimony the same as the testimony of other witnesses and, therefore, they could accept or reject it, in whole or in part, as they deemed it credible. In order to reach the conclusion that the defendant wishes this court to reach, the judge would have to put himself in the position of a juror and say that they failed to weigh the testimony properly. The court does not feel it should do that in this case.

The other grounds that were urged were not argued and this court has reviewed them and finds they are without merit.

The defendant's motion in arrest of judgment and his motion for a new trial are both denied.